THE STATE OF NEVADA, Appellant, *v.* ROLLAND
P. WEDDELL, Respondent.

No. 34832

April 10, 2002                                    43 P.3d 987

ROSE, J., with whom MAUPIN, C. J., and YOUNG, J., agreed, dissented in part.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Noel S. Waters,* District Attorney, and *Anne M. Langer,* Deputy District Attorney, Carson City, for Appellant.

*Fred Hill Atcheson,* Reno; *Day R. Williams,* Carson City, for Respondent.

# OPINION ON EN BANC RECONSIDERATION

By the Court, AGOSTI, J.:

The State appeals from an order of the district court granting a motion to dismiss a criminal information against respondent Rolland P. Weddell. In a unanimous opinion, a three-justice panel of this court reversed the district court's order and remanded this case for further proceedings.[1] Weddell petitioned for rehearing, and the panel denied the petition, with one justice dissenting from the order denying rehearing. Weddell then filed a petition for en banc reconsideration. This court determined that en banc reconsideration was warranted, and the petition was granted. Having reconsidered this appeal, a majority of the full court has now concluded that this opinion upon en banc reconsideration should issue, reaffirming the panel's initial holding.

In this case, we are asked to determine whether a private person may use deadly force in making what is commonly referred to as a citizen's arrest.[2] Weddell contends that private persons have a common law right to use whatever force is necessary, including deadly force, to accomplish the arrest of and/or prevent the escape of a fleeing felon. We reject Weddell's contention for several reasons. Primarily, we conclude that the legislature indicated its disapproval of the use of deadly force by private persons when it repealed NRS 200.160(3) in 1993 and at the same time enacted NRS 171.1455. NRS 200.160(3) had been a codification of the common law fleeing-felon rule.[3] NRS 171.1455 limits the

---

[1] *See State v. Weddell,* 117 Nev. 651, 27 P.3d 450 (2001).

[2] NRS 171.126 sets out the circumstances under which private persons may arrest individuals.

[3] NRS 200.160 stated as follows:

Homicide is also justifiable when committed either:

1. In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished;

2. In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling, or other place of abode in which he is; or

3. By any person, when committed upon the person of another who is engaged in the commission of a felony or an attempted felony, or who after the commission or attempted commission of any such felony is fleeing from the premises or resisting lawful pursuit and arrest within 20 miles of the premises where such felony was committed or attempted to be committed.

use of deadly force by police officers when making or attempting a felony arrest.[4] Furthermore, in enacting NRS 171.1455, which restricts an officer's use of deadly force and circumscribes the application of the common law fleeing-felon rule to law enforcement, the legislature has disavowed the unbridled use of deadly force. We also note that the policies supporting the fleeing-felon rule have been eroded as a result of modern, more arbitrary distinctions between misdemeanors and felonies.

With these considerations in mind, we hold that a private person, when arresting another person pursuant to NRS 171.126, may use no more force than is necessary and reasonable to secure the arrest. We further hold that deadly force is, as a matter of law, unreasonable, unless the deadly force is used in defense of self or others against a threat of serious bodily injury.

## FACTS

Weddell operates a construction business in Carson City. On the evening of October 16, 1997, a person, whom Weddell believes was James Bustamonte, was a passenger in a late-model Chevrolet Blazer that entered his business's grounds. Not recognizing the truck, John Cole, an employee of Weddell, approached it. As he did, the truck accelerated, turned toward Cole, and struck him. The passenger threatened Cole and asked about Weddell's daughter's whereabouts. Although dazed, Cole was able to relate the incident to the police and Weddell, and was able to report a partial license plate number for the truck.

By the next day, Weddell learned that the Bustamonte brothers were looking for Weddell's daughter regarding an alleged drug transaction. Weddell learned the Bustamontes' address from his daughter and provided it to a detective at the Carson City Sheriff's Office. Unsatisfied with the detective's response, Weddell proceeded to the address. When he noticed that there was a Blazer at the residence which matched Cole's description, Weddell called police dispatch.

After fifteen minutes had passed the police had not arrived. At that time, Bustamonte and a woman exited the house and walked toward the Blazer. Weddell then parked his car behind the Blazer to prevent its departure. While pointing his gun at Bustamonte,

---

[4]NRS 171.1455 reads as follows:

> If necessary to prevent escape, an officer may, after giving a warning, if feasible, use deadly force to effect the arrest of a person only if there is probable cause to believe that the person:
>
> 1. Has committed a felony which involves the infliction or threat of serious bodily harm or the use of deadly force; or
> 2. Poses a threat of serious bodily harm to the officer or to others.

Weddell ordered him to place his hands on the hood. After a disputed verbal exchange, Bustamonte turned and ran and Weddell shot at him several times.[5]

Weddell was arrested and charged with assault with a deadly weapon and discharging a firearm at another. After a preliminary hearing, Weddell was bound over to the district court on both counts.

Weddell filed a motion to dismiss the charges in the district court. After a hearing, the district court granted the motion. At this hearing, the district court admitted the preliminary hearing transcript and other documents into evidence and allowed witness testimony. In dismissing the charges against Weddell, the district court made express findings of fact and conclusions of law.

In granting Weddell's motion to dismiss, the district court first recognized that Nevada law permits private persons to arrest a felon even if the felony is committed outside his or her presence. Second, it determined that Bustamonte committed a felony by striking Cole. Third, it found that Weddell was attempting to arrest Bustamonte for the felony. Fourth, it recognized that the legislature had repealed the statute justifying a person's use of deadly force when attempting to arrest a fleeing felon and had enacted a statute limiting a police officer's use of deadly force. Finally, the court concluded that as a matter of law, Weddell was not guilty of assault or discharging a firearm in public because ''an individual ha[s] the right to use whatever force [i]s necessary to effect the arrest of a fleeing felon.'' The State appeals from that dismissal.[6]

## DISCUSSION

The State contends that the district court erroneously determined that Weddell's use of deadly force to effect a citizen's arrest was permissible under Nevada law. We agree.

Nevada, like many other states, permits a private person to arrest a person suspected of committing a felony. NRS 171.126 provides that a private person may arrest another person in three situations: (1) when an offense was committed or attempted in the arrestor's presence, (2) when the person committed a felony

---

[5]Weddell's account of the interaction is substantially different from that of two eyewitnesses. According to Weddell, Bustamonte made threatening gestures toward him. Contending that his sole motivation was to protect the public from this dangerous man, Weddell claims that he would not have shot at Bustamonte had he not felt threatened. Wanda Gambill and her daughter, Laura Dunn, testified that although they could not hear the conversation, Bustamonte did not approach Weddell or make any threatening moves toward him.

[6]A district court's order dismissing a criminal information is appealable to this court. NRS 177.015(1)(b).

offense although outside the arrestor's presence, and (3) when a felony has in fact been committed and the arrestor has reasonable cause to believe that the person to be arrested has committed it.

Nevada statutes and case law do not address the amount of force permissible to effect an arrest. Some amount of force is necessarily implied in the statute, however, since the act of arresting another would seem to require a modicum of force. This case requires us to determine, as a matter of first impression, what amount of force is allowed under NRS 171.126.

At common law, the fleeing-felon rule permitted a private person to use deadly force to apprehend a felon.[7] The use of deadly force was permitted to prevent the commission of a felony or to arrest someone who had committed one. The rule was developed at a time when felonies were only the very serious, violent or dangerous crimes and "virtually all felonies were punishable by death."[8] As the United States Supreme Court noted, " 'Though effected without the protections and formalities of an orderly trial and conviction, the killing of a resisting or fleeing felon resulted in no greater consequences than those authorized for punishment of the felony of which the individual was charged or suspected.' "[9]

Today, however, many crimes which are punished as felonies do not involve dangerous conduct or violence and are not punishable by death. As the United States Supreme Court observed in *Tennessee v. Garner,* the modern distinction between felonies and misdemeanors is "minor and often arbitrary."[10] For example, a person who works at a voter registration agency and who wears a "Vote for Jane Johnson" button at work is guilty of a felony.[11] A person who steals $255 worth of bedding from a hotel is guilty of a felony.[12] A person who buys $250 worth of food stamps from someone when not authorized to do so is guilty of a felony.[13] These felons, like many others, will not receive the death penalty.[14] Society would not tolerate the use of deadly force to prevent the commission of any of these crimes or to apprehend someone suspected of any of these crimes. The modern arbitrary and expanded classification of crimes as felonies has undermined the rationale for the old common law fleeing-felon rule, which, as

[7] *Tennessee v. Garner,* 471 U.S. 1, 12 (1985).

[8] *Id.* at 13.

[9] *Id.* at 13-14 (quoting *Model Penal Code* § 3.07 cmt. 3 at 56 (American Law Inst., Tentative Draft No. 8, 1958)).

[10] *Id.* at 14.

[11] NRS 293.5045.

[12] *See* NRS 205.220; NRS 205.222; NRS 193.130.

[13] NRS 207.340.

[14] NRS 193.130.

mentioned, was to prevent the escape of a felon by inflicting the punishment that was inevitably to come.[15]

In 1931, Nevada codified the common law fleeing-felon rule by amending the justifiable homicide statute, which is currently codified as NRS 200.160.[16] In 1993, the legislature repealed Nevada's codification of the fleeing-felon rule when it passed A.B. 209.[17] In that same bill, the legislature enacted NRS 171.1455, which limits an officer's use of deadly force upon a fleeing suspect.[18] The minutes of the Senate and Assembly Judiciary Committees' hearings on the drafting of that bill reveal the legislative intent to adopt the United States Supreme Court's holding in *Garner*. While the committees were primarily concerned with the cost of defending a suit like the one in *Garner,* the minutes also inform us that the drafters were concerned with a private person's use of force against a fleeing felon.[19]

The State argues that when the legislature repealed NRS 200.160(3) and simultaneously enacted NRS 171.1455, it meant to eliminate the justified use of deadly force by private persons when arresting a felon.

Weddell argues that private persons have a common law right to use deadly force to arrest a fleeing felon. As such, he contends that the repeal of NRS 200.160(3) and enactment of NRS 171.1455 had no effect on the right to use deadly force.[20]

We resolve this dispute by addressing the effect of the legislature's repeal of its earlier codification of the fleeing-felon rule.[21]

---

[15]*Garner,* 471 U.S. at 14.

[16]*Compare* 1931 Nev. Stat., ch. 96, § 1, at 160, *with* 1929 Nev. Compiled Laws § 10080, *and* Crimes and Punishments Act of 1911 § 133, *reprinted in* 1912 Nev. Rev. Laws § 6398.

[17]1993 Nev. Stat., ch. 329, § 4, at 932.

[18]*Id.* § 1, at 931.

[19]Hearing on A.B. 209 Before the Senate Comm. on Judiciary, 67th Leg. (Nev., May 14, 1993); *see also* Hearing on A.B 209 Before the Assembly Comm. on Judiciary, 67th Leg. (Nev., June 22, 1993); Hearing on A.B. 209 Before the Assembly Comm. on Judiciary, 67th Leg. (Nev., March 3, 1993).

[20]Weddell also contends that since the right to use deadly force exists at common law, the State may not prosecute him for using deadly force while attempting to arrest a fleeing felon, absent a criminal statute proscribing this conduct.

This contention is unfounded because the unlawful use (and attempted use) of force upon another is already prohibited by statute. *See, e.g.,* NRS 200.010; NRS 200.400; NRS 200.471. The former NRS 200.160(3) made these crimes justifiable, thereby providing a defense to prosecution—not an immunity from prosecution.

[21]*See Chapman Industries v. United Insurance,* 110 Nev. 454, 874 P.2d 739 (1994); *Clark Co. v. State, Equal Rights Comm'n,* 107 Nev. 489, 813 P.2d 1006 (1991); *Chapman v. City of Reno,* 85 Nev. 365, 455 P.2d 618 (1969).

When a statute is repealed, we presume that the legislature intended a substantial change in the law.[22] Thus, in repealing NRS 200.160(3), the legislature indicated its disapproval of private persons using deadly force when arresting or attempting the arrest of a person suspected of a felony. In addition, by simultaneously enacting NRS 171.1455 the legislature obviously meant to limit the use of deadly force to police officers and to limit the circumstances under which police officers could employ such force. To conclude otherwise would be unreasonable. The legislature could not have meant to repose what might easily amount to vigilante justice in the hands of private persons while restricting the use of force in making an arrest by those who are charged by law with duties of public safety and protection.[23] By repealing the codification of the fleeing-felon rule and leaving the citizen's arrest statute and the defense of others statute intact, the legislature has abrogated the common law fleeing-felon rule while at the same time affirming that private persons may perform arrests.

Other jurisdictions similarly provide by statute that a private person may make an arrest, but do not dictate the amount of force that is allowable.[24] While we recognize that some jurisdictions allow the use of deadly force when necessary to prevent the escape of a fleeing felon,[25] we conclude that a rule authorizing arrest by any necessary means contravenes our legislature's clear intent to restrict private persons' use of deadly force as evidenced by its repeal of the former NRS 200.160(3). We also observe that some jurisdictions limit the use of deadly force despite the absence of an explicit legislative mandate to do so.

In *Prayor v. State*,[26] the Georgia Court of Appeals determined

---

[22]*Equal Rights Comm'n*, 107 Nev. at 491, 813 P.2d at 1006 (citing *McKay v. Bd. of Supervisors*, 102 Nev. 644, 730 P.2d 438 (1986)).

[23]While enacting A.B. 209, the legislature left intact NRS 171.126, which authorizes private persons to arrest criminal suspects in certain situations. As noted earlier, implied in an arrest is the use of force necessary to secure it. NRS 171.138 expressly permits the breaking of a door or window in order to arrest a concealed suspected felon. We presume that the legislature was aware of these statutes when it enacted A.B. 209. *See City of Boulder v. General Sales Drivers*, 101 Nev. 117, 118-19, 694 P.2d 498, 500 (1985) ("It is presumed that in enacting a statute the legislature acts with full knowledge of existing statutes relating to the same subject." (citing *Ronnow v. City of Las Vegas*, 57 Nev. 332, 366, 65 P.2d 133, 146 (1937))).

[24]*See, e.g.*, Ga. Code. Ann. § 17-4-60 (1997); Mich. Comp. Laws § 764.16 (2000).

[25]*See State v. Cooney*, 463 S.E.2d 597 (S.C. 1995) (holding that a private person may use reasonably necessary force to make an arrest and rejecting trial court's determination that using deadly force upon an unarmed fleeing felon is per se unreasonable); *People v. Hampton*, 487 N.W.2d 843 (Mich. Ct. App. 1992) (holding that, if necessary, private persons may use deadly force to prevent the escape of a fleeing felon).

[26]456 S.E.2d 664 (Ga. Ct. App. 1995).

that, pursuant to a statute similar to Nevada's, private citizens may not use more force than is reasonable under the circumstances. The Georgia appellate court also determined that a private person may only use deadly force to effect an arrest when acting in self-defense or when it is necessary to prevent a forcible felony.

Similarly, in *State v. Johnson*,[27] the New Mexico Court of Appeals rejected the argument that private persons may use whatever force is necessary to prevent a fleeing felon's escape. Instead, the court held that a private citizen's use of force in apprehending a fleeing felon must be reasonable and necessary. Although New Mexico statutes provide that a homicide committed by a private person in the course of an arrest is justifiable when " 'necessarily committed . . . by lawful ways and means,' " the court held that a private person may use deadly force only "when the citizen has probable cause to believe that he or she is threatened with serious bodily harm or the use of deadly force."[28]

Given our legislature's evident disapproval of the fleeing-felon doctrine, and given our concern that the rationale for the rule at common law no longer exists, and given the abandonment of this common law rule in other states, we hold that, in securing or attempting an arrest under NRS 171.126, a private person may only use the amount of force that is reasonable and necessary under the circumstances. Further, we hold that the use of deadly force is, as a matter of law, unreasonable, unless the arrestee poses a threat of serious bodily injury to the private arrestor or others. Like the affirmative defense of self-defense, the State bears the burden to prove that the use of deadly force was not reasonable and necessary.[29]

## CONCLUSION

The district court erred by dismissing the information filed against Weddell. Weddell has no absolute common law or statutory right to use deadly force in making an arrest. Weddell's use of deadly force to make an arrest was unreasonable, as a matter of law, unless he was threatened with serious bodily injury to himself or others. Whether Weddell was so threatened is a question of fact reserved for trial. Accordingly, we reverse the district court's order and remand this matter for reinstatement of the information and for trial upon the charges.

---

[27]954 P.2d 79 (N.M. Ct. App. 1997).

[28]*Id.* at 86 (quoting NMSA 1978, § 30-2-7(C) (1963)).

[29]*See Barone v. State*, 109 Nev. 778, 858 P.2d 27 (1993).

SHEARING, LEAVITT and BECKER, JJ., concur.

ROSE, J., with whom MAUPIN, C. J., and YOUNG, J., agree, concurring in part and dissenting in part:

The majority opinion holds that the repeal of the fleeing-felon rule does not result in the rule's continued existence by virtue of NRS 1.030, the statute that mandates the application of the common law where not abrogated by an express statute. I believe the majority reaches the correct analysis of the applicable statutes, but that the court is announcing a new rule in the process. And as Weddell argues, a new rule should not be applied to him in the present case.[1]

After the legislature repealed NRS 200.160(3), which contained the fleeing-felon rule, Nevada law still permitted a citizen to arrest a suspected fleeing felon pursuant to NRS 171.126. Some use of force is obviously foreseen by this statute, but exactly what force a citizen can use is not stated. Other jurisdictions with similar statutes have concluded that resort to the common law was appropriate to determine what force could be used, and that resulted in the application of the fleeing-felon rule.[2] Unless our situation is changed by having enacted the fleeing-felon rule and then repealing it, the same reasoning should apply to this case.

In the majority opinion, it is determined that the repeal of the fleeing-felon rule and the simultaneous enactment of a statute permitting police to use deadly force showed a legislative intent to limit deadly force in apprehending felons to police officers. I concur in that analysis, but it seems to me that we have announced a new rule based on our interpretation of what the legislature intended, not what the statutes expressly stated.

A criminal statute should clearly state what conduct is prohibited and the penalty for its violation.[3] In this case, we have a statute that did not specify the force a citizen can use in apprehending a fleeing felon, we have the repeal of the fleeing-felon rule and the enactment of a statute permitting only police the use of deadly force in apprehending fleeing felons, and we also have

---

[1]See Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964) ("If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." (quoting Hall, General Principles of Criminal Law 61 (2d ed. 1960))).

[2]See, e.g., State v. Cooney, 463 S.E.2d 597 (S.C. 1995); People v. Hampton, 487 N.W.2d 843 (Mich. Ct. App. 1992).

[3]Lyons v. State, 105 Nev. 317, 320, 775 P.2d 219, 221 (1989) (" 'The Constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.' " (quoting United States v. Harriss, 347 U.S. 612, 617 (1954))).

a statute that directs the common law be applied where not specifically abrogated by statute. With all these variables in play, our law was not so express that it can be said to be clear and unambiguous. The majority had to reject the applicability of NRS 1.030, and then resort to legislative intent and the desire to reach a reasonable result to eventually decide this case. But when reasonable ambiguity exists in a statute or series of statutes, the benefit of interpretation should favor the accused.[4]

Accordingly, I think the majority correctly answers the legal question posed by this case, but in the process has announced a new rule that should not be applied in the present case. I would affirm the district court's order because the new rule should not apply to Weddell.

[4]*Sheriff v. Lang,* 104 Nev. 539, 542, 763 P.2d 56, 58 (1988) (noting our long-held policy that "ambiguous penal statutes must be construed liberally in favor of an accused").