131 Nev., Advance Opinion 97

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PATRICK NEWELL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66552

**FILED**

DEC 24 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of battery with the use of a deadly weapon and attempted assault with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Jerome T. Tao, Judge.

*Affirmed.*

Philip J. Kohn, Public Defender, and Howard Brooks and Scott L. Coffee, Deputy Public Defenders, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens and Jonathan VanBoskerck, Chief Deputy District Attorneys, and Ryan J. MacDonald, Deputy District Attorney, Clark County,
for Respondent.

BEFORE SAITTA, GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, SAITTA, J.:

The plain language of NRS 200.160 states that homicide is justified in response to a reasonable apprehension of the commission of a

15-39581

felony or in the actual resistance of an attempted felony, but it does not specify the type of felony. This opinion addresses whether there is any limitation as to the use of deadly force in response to the commission of a felony under NRS 200.160. We extend our holding in *State v. Weddell*, 118 Nev. 206, 43 P.3d 987 (2002), to require that the use of deadly force in response to a felony is only justified when the person poses a threat of serious bodily injury; otherwise, the amount of force used must be reasonable and necessary under the circumstances.

## *FACTUAL AND PROCEDURAL HISTORY*

In 2012, appellant Patrick Newell sprayed Theodore Bejarano with gasoline and lit Bejarano on fire during an altercation at a gas station. Newell also threatened Bejarano with a small pocket knife, although Bejarano could not later recall this incident. Newell was charged with Count 1: attempted murder with the use of a deadly weapon; Count 2: battery with the use of a deadly weapon; Count 3: assault with the use of a deadly weapon; and Count 4: performance of an act in reckless disregard of persons or property. Count 3 was later amended to attempted assault with the use of a deadly weapon.

At trial, Newell claimed that his actions were a justifiable battery because he reasonably believed that Bejarano was committing felony coercion against him at the time of the incident. Newell proposed the following instruction on justifiable battery:

> Justifiable battery is the battery of a human being when there is reasonable ground to apprehend a design on the part of the person battered to commit a felony and there is [imminent] danger of such a design being accomplished. This is true even if deadly force is used. . . .

The district court, over Newell's objection, added the following language to the instruction based on our decision in *State v. Weddell*, 118 Nev. 206, 43 P.3d 987 (2002):

> The amount of force used to effectuate the battery must be reasonable and necessary under the circumstances. Deadly force cannot be used unless the person battered poses a threat of serious bodily injury.

The jury found Newell guilty of Counts 2, 3, and 4. Count 4 was later dismissed by the district court. On appeal, Newell argues that the district court abused its discretion by giving a jury instruction that was an incorrect statement of Nevada law and that his conviction for attempted assault is legally impossible.

## DISCUSSION

*The district court did not abuse its discretion in giving the jury instruction*

Newell argues that the plain language of NRS 200.160 does not require the amount of force used in defense of a felony to be reasonable and necessary or that the person battered pose a threat of serious bodily injury in order for deadly force to be used. Therefore, he contends that the district court abused its discretion by adding those requirements to the instruction on justifiable battery.

"The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). Whether an instruction was an accurate statement of law is reviewed de novo. *Davis v. State*, 130 Nev., Adv. Op. 16, 321 P.3d 867, 871 (2014).

"[W]hen the words of a statute are clear and unambiguous, they will be given their plain, ordinary meaning," and we need not look

beyond the language of the statute. *State v. Friend*, 118 Nev. 115, 120, 40 P.3d 436, 439 (2002). However, when the "literal, plain meaning interpretation" leads to an unreasonable or absurd result, this court may look to other sources for the statute's meaning. *Id.* at 120-21, 40 P.3d at 439.

*The plain meaning of the justifiable battery statutes do not require that the amount of force used be reasonable and necessary or in response to a threat of serious bodily injury*

Battery is justified in any circumstance that justifies homicide. NRS 200.275. Justifiable homicide is defined by NRS 200.120 through NRS 200.190. At issue in the current case is NRS 200.160, which provides for "[a]dditional cases of justifiable homicide." NRS 200.160 states that homicide is justifiable when committed

> 1. In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother or sister, or of any other person in his or her presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or

> 2. In the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode in which the slayer is.

The plain language of NRS 200.160 does not require that the amount of force used be reasonable and necessary in order to be justified or state that deadly force may only be used in response to a threat of serious bodily injury. Rather, the statute requires that in order to be justified, the homicide must be in response to a reasonable apprehension of a felony or in the actual resistance of an attempted felony, regardless of

SUPREME COURT
OF
NEVADA

(O) 1947A

4

the type of felony. *See Davis*, 130 Nev., Adv. Op. 16, 321 P.3d at 873 ("The plain language of [NRS 200.160] does not differentiate between the types of felonies from which a person may defend himself."). Thus, a plain reading of NRS 200.160 and NRS 200.275 appears to justify any battery committed in the reasonable apprehension of *any* felony or in resistance of an attempt to commit *any* felony, regardless of the amount of force used or whether the person battered poses a threat of serious bodily injury. Because such an interpretation is unreasonable and absurd, we look to other sources for the statutes' meaning. See *Friend*, 118 Nev. at 121, 40 P.3d at 439.

### *State v. Weddell*

In drafting the jury instruction at issue, the district court relied on our holding in *Weddell*, 118 Nev. at 214, 43 P.3d at 992. At issue in *Weddell* was whether a private party could use deadly force to arrest a fleeing felon. *Id.* at 208, 43 P.3d at 988. Nevada had previously codified the common-law rule permitting a private person to use deadly force to apprehend a felon but later repealed it. *Id.* at 212, 43 P.3d at 990. In the same bill repealing Nevada's codification of this common-law rule, the Legislature enacted NRS 171.1455, a statute limiting a police officer's use of deadly force against a fleeing felon. *Id.* However, the new statute made no mention of limiting a private party's use of deadly force. *Id.*

The *Weddell* court, relying on the United States Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1 (1985), concluded that the policy rationale that existed at common law for allowing deadly force to be used in apprehending a felon had been eroded. *Weddell*, 118 Nev. at 211, 43 P.3d at 990. It reasoned that "[t]he rule was developed at a time when felonies were only the very serious, violent or dangerous crimes and 'virtually all felonies were punishable by death'"; therefore, the killing of a

fleeing felon resulted in no greater punishment than the felon would receive if arrested. *Id.* (quoting *Garner*, 471 U.S. at 13). The *Weddell* court noted that, in contrast, "the modern distinction between felonies and misdemeanors is 'minor and often arbitrary'" and that

> [s]ociety would not tolerate the use of deadly force to prevent the commission of any of these crimes or to apprehend someone suspected of any of these crimes. The modern arbitrary and expanded classification of crimes as felonies has undermined the rationale for the old common law fleeing-felon rule, which . . . was to prevent the escape of a felon by inflicting the punishment that was inevitably to come.

*Id.* at 211-12, 43 P.3d at 990 (quoting *Garner*, 471 U.S. at 14). Thus, because of the "legislature's evident disapproval of the fleeing-felon doctrine," and because "the rationale for the rule at common law no longer exists," the *Weddell* court held that

> a private person may only use the amount of force that is reasonable and necessary under the circumstances. Further, we hold that the use of deadly force is, as a matter of law, unreasonable, unless the arrestee poses a threat of serious bodily injury to the private arrestor or others.

*Id.* at 214, 43 P.3d at 992. Thus, *Weddell's* holding is almost identical to the language that the district court added to Newell's justifiable battery instruction. *See id.*

*Weddell's reasoning is applicable to our interpretation of the justifiable homicide statutes*

Although *Weddell* dealt with the issue of the fleeing-felon rule, we find that its reasoning is nonetheless applicable to our interpretation of NRS 200.160. Similar to *Weddell*, this case deals with a common-law rule allowing the use of deadly force against a felon or someone committing a

SUPREME COURT
OF
NEVADA

(O) 1947A

6

felony without distinguishing the type of felony committed. *See Weddell*, 118 Nev. at 212, 43 P.3d at 990 (fleeing-felon statute held to be a codification of the common law); *see also People v. Ceballos*, 526 P.2d 241, 245 (Cal. 1974) (holding that a justifiable homicide statute similar to NRS 200.160 was a codification of the common law). Thus, we find that in both *Weddell* and the current case the "rationale for the rule at common law no longer exists" because "the modern distinction between felonies and misdemeanors is 'minor and often arbitrary.'" *Weddell*, 118 Nev. at 211, 214, 43 P.3d at 990, 992 (quoting *Garner*, 471 U.S. at 14).

Likewise, we believe that "[s]ociety would not tolerate the use of deadly force to prevent the commission of any [nonviolent felony]." *Id.* at 211, 43 P.3d at 990. Newell argues that by the plain language of NRS 200.160(2), in order for a homicide to be justifiable, a felony must be committed *upon* the slayer. Thus, Newell argues that a literal construction of NRS 200.160 would not create absurd results, as it would not allow for nonviolent felonies such as bribery of a judicial officer or forgery to be met with deadly force. However, we do not find the plain language of NRS 200.160 to be so constrained. The plain language of NRS 200.160(2) authorizes the use of deadly force not only in resistance of felonies committed upon the slayer but also in response to felonies committed in the resistance of a felony *in the slayer's presence* or when the felony is *upon the slayer's dwelling*. Thus, the plain language of NRS 200.160(2) permits justifiable homicide in response to *any* felony committed in the slayer's presence or upon the slayer's dwelling. Under this reading, deadly force could be justifiably used in response to a drug transaction committed in the slayer's presence. *See* NRS 200.160(2). To allow deadly force to be used in such circumstances is both intolerable to

society and inconsistent with the original intent of the Legislature when it first enacted NRS 200.160.

Therefore, we extend our holding in *Weddell* to NRS 200.160 and require that in order for homicide in response to the commission of a felony to be justifiable under that statute, the amount of force used must be reasonable and necessary under the circumstances. Furthermore, deadly force cannot be used unless the person killed poses a threat of serious bodily injury to the slayer or others. By extension, the amount of force used in a battery must also be reasonable and necessary in order to be justified, and deadly force cannot be used unless the person battered poses a threat of serious bodily injury to the slayer or others. Because the district court correctly included these requirements in its justifiable battery jury instruction, we hold that it did not abuse its discretion.

*Attempted assault under NRS 200.471(1)(a)(2) is not legally impossible*

Newell argues that because at common law assault was an attempted battery, attempted assault is a legally impossible double inchoate crime.

In Nevada, assault is broader than at common law. It includes:

> (1) Unlawfully attempting to use physical force against another person; or

> (2) Intentionally placing another person in reasonable apprehension of immediate bodily harm.

NRS 200.471(1)(a). Thus, Nevada law codifies assault as two distinct activities: (1) the attempt to commit battery or (2) the intentional placement of another person in fear of immediate bodily harm. Only the first is the equivalent of the common-law offense.

Here, Newell was convicted of attempted assault under NRS 200.471(1)(a)(2): the intentional placement of "another person in reasonable apprehension of immediate bodily harm." While we agree that the attempt to attempt a crime is legally impossible, *see Lamb v. State*, 613 A.2d 402, 419 (Md. Ct. Spec. App. 1992) ("There can be no such offense as an 'attempt to attempt' a crime." (internal quotation marks omitted)), NRS 200.471(1)(a)(2) is not a crime of attempt. Therefore, we hold that Newell's conviction for attempted assault under NRS 200.471(1)(a)(2) was not legally impossible.

## CONCLUSION

Because the district court correctly based its justifiable battery instruction on our holding in *Weddell*, it did not abuse its discretion. Furthermore, attempted assault under NRS 200.471(1)(a)(2) is not legally impossible. Therefore, we affirm Newell's judgment of conviction.

_____, J.
Saitta

We concur:

_____, J.
Gibbons

_____, J.
Pickering

