136 Nev., Advance Opinion 12

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WILBER ERNESTO MARTINEZ GUZMAN, Petitioner, vs. THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE; AND THE HONORABLE CONNIE J. STEINHEIMER, DISTRICT JUDGE, Respondents, and THE STATE OF NEVADA, Real Party in Interest. | No. 79079 **FILED** MAR 26 2020 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY S. Young DEPUTY CLERK |

Original petition for a writ of prohibition or, in the alternative, writ of mandamus challenging a district court order denying a motion to dismiss.

*Petition granted in part and denied in part.*

John L. Arrascada, Public Defender, and John Reese Petty, Joseph W. Goodnight, Katheryn Hickman, and Gianna Verness, Chief Deputy Public Defenders, Washoe County,
for Petitioner.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, Marilee Cate, Appellate Deputy District Attorney, and Travis Lucia, Deputy District Attorney, Washoe County; Mark Jackson, District Attorney, Douglas County,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

20-11559

*OPINION*

By the Court, CADISH, J.:

In resolving this writ petition,[1] we consider the meaning of territorial jurisdiction under NRS 172.105, which is the statute that defines the authority of a grand jury to inquire into criminal offenses. The Washoe County grand jury indicted petitioner Wilber Martinez Guzman on ten counts. Four of the counts concerned offenses committed in Douglas County.[2] Martinez Guzman filed a motion to dismiss the four Douglas County counts, arguing that the Washoe County grand jury did not have the authority to return an indictment for offenses committed in Douglas County. The district court denied Martinez Guzman's motion, finding that a grand jury's authority to return an indictment under NRS 172.105 "extends statewide to all felony offenses." The district court based its denial on its interpretation of the statute's language permitting the grand jury to "inquire into all public offenses triable in the district court or in a Justice Court, committed within the territorial jurisdiction of the district court for which it is impaneled." NRS 172.105.

We hold that the district court incorrectly interpreted this language in denying Martinez Guzman's motion to dismiss, as "territorial jurisdiction" of the district court does not extend statewide, thereby encompassing any offense committed within Nevada. Rather, we hold that

---

[1]We conclude that mandamus is the most appropriate remedy here, as Martinez Guzman asserts that the law requires the district court to grant his motion to dismiss. NRS 34.160 (permitting this court to issue a writ of mandamus to compel the performance of an act that the law requires).

[2]Washoe County is within the Second Judicial District Court. Douglas County is within the Ninth Judicial District Court.

 

"territorial jurisdiction" under NRS 172.105 is tied to our existing statutes governing the proper court where a criminal case may be pursued, and thus the statute empowers a grand jury to inquire into an offense so long as the district court that empaneled the grand jury may appropriately adjudicate the defendant's guilt for that offense. We therefore grant the petition in part and vacate the district court's order so that it may reconsider Martinez Guzman's motion to dismiss. In doing so, the district court shall review the evidence presented to the Washoe County grand jury to determine whether there is a sufficient connection between the Douglas County offenses and Washoe County. To do so, the district court must determine whether venue would be proper in Washoe County for the Douglas County offenses. If so, then the Washoe County grand jury has the authority to inquire into the Douglas County offenses, and criminal proceedings may continue. If not, then the Washoe County grand jury does not have the authority to inquire into the Douglas County offenses, and the district court must grant Martinez Guzman's motion to dismiss. We deny the petition to the extent that Martinez Guzman seeks a writ directing the district court to grant his motion to dismiss outright.

## FACTS AND PROCEDURAL HISTORY

According to the charging documents, the following was alleged. On January 3, 2019, Martinez Guzman burglarized the home of Gerald and Sharon David in Washoe County. The following day, Martinez Guzman returned to the Davids' home, stealing a revolver from an outbuilding located on the property. On or about January 9, Martinez Guzman entered the home of Constance Koontz located in Douglas County, fatally shot Koontz, and burglarized her home. Martinez Guzman used the revolver stolen from the Davids in the murder. On or about January 12, Martinez Guzman entered the home of Sophia Renken, also located in Douglas

County, and fatally shot her with the same revolver. On or about January 15, Martinez Guzman returned to the Davids' home, fatally shot the Davids, and further burglarized the property. Following Martinez Guzman's arrest and subsequent interrogation, police discovered various firearms belonging to the Davids wrapped in a tarp and buried in the hills around Carson City. The State alleges that Martinez Guzman placed the stolen firearms in that location.

The Washoe County grand jury returned an indictment, which the Washoe and Douglas County District Attorneys jointly filed. The indictment charged Martinez Guzman with ten felony counts. Martinez Guzman filed a motion to dismiss the four counts alleging criminal offenses committed in Douglas County. He argued that the Washoe County grand jury lacked the "territorial jurisdiction" to return an indictment for offenses committed in Douglas County.[3] Martinez Guzman relied on NRS 172.105, which provides that "[t]he grand jury may inquire into all public offenses triable in the district court or in a Justice Court, committed within the territorial jurisdiction of the district court for which it is impaneled." Martinez Guzman argued that "territorial jurisdiction of the district court" is a limiting term that confines the grand jury's authority to crimes allegedly committed within the boundaries of Washoe County.

After considering NRS 172.105's legislative history, as well as other statutes, constitutional provisions, and caselaw, the district court denied the motion. It determined that "territorial jurisdiction" is an

_____

[3]Martinez Guzman contemporaneously filed a pretrial petition for a writ of habeas corpus in district court that raised many of the same arguments. The district court denied the petition. We are reviewing the district court's order granting the motion to dismiss because Martinez Guzman specifically challenged that order in his writ petition before this court.

expansive term giving Nevada district courts "jurisdiction over felony offenses, not confined to the respective county or counties that are part of their district," and thus "the Second Judicial District Court's territorial jurisdiction extends statewide to all felony offenses." The district court concluded that the Washoe County grand jury had the same statewide authority and thus could properly return an indictment on the Douglas County counts. Martinez Guzman filed the instant petition, requesting that this court order the district court to grant his motion to dismiss.

## DISCUSSION

### Standards for writ relief

A writ of mandamus is available "to compel the performance of an act which the law requires as a duty resulting from an office or where discretion has been manifestly abused or exercised arbitrarily or capriciously." *Redeker v. Eighth Judicial Dist. Court*, 122 Nev. 164, 167, 127 P.3d 520, 522 (2006), *limited on other grounds by Hidalgo v. Eighth Judicial Dist. Court*, 124 Nev. 330, 341, 184 P.3d 369, 377 (2008); *see* NRS 34.160. A writ of mandamus is an extraordinary remedy and issuance of such a writ is discretionary. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). Generally, writ relief is not appropriate if the petitioner has "a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. While an appeal from the final judgment generally constitutes an adequate legal remedy precluding writ relief, *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004), we have exercised our discretion to intervene "under circumstances of urgency or strong necessity, or when an important issue of law needs clarification and sound judicial economy and administration favor the granting of the petition." *State v. Second Judicial Dist. Court (Ducharm)*, 118 Nev. 609, 614, 55 P.3d 420, 423 (2002). This petition presents such a

 

case because the meaning of territorial jurisdiction, and thus the scope of a grand jury's authority, under NRS 172.105 is an important question of law that needs clarification. Additionally, under these pretrial circumstances, the interests of sound judicial economy and administration favor consideration of this petition.

*Statutory interpretation of NRS 172.105*

We review questions of statutory interpretation de novo. *Mendoza-Lobos v. State*, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009); *see Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 40, 175 P.3d 906, 908 (2008) ("Even when raised in a writ petition, this court reviews questions of statutory interpretation de novo."). Statutory interpretation concerns determining legislative intent, and the starting point is the statute's plain language. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). When the meaning of the language is clear, the analysis ends, "[b]ut when 'the statutory language lends itself to two or more reasonable interpretations,' the statute is ambiguous," and this court may then look to other tools such as legislative history, reason, and public policy to determine legislative intent. *Id.* (quoting *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004)). The statute at issue here, NRS 172.105, defines the power of the grand jury. The statute states that "[t]he grand jury may inquire into all public offenses triable in the district court or in a Justice Court, committed within the *territorial jurisdiction* of the district court for which it is impaneled." NRS 172.105 (emphasis added). Our criminal procedure statutes do not define the term "territorial jurisdiction." Moreover, both Martinez Guzman's interpretation of the term, as providing a clear geographic limitation within which the crime must have occurred, as well the State's interpretation, relying on the statewide jurisdiction of district judges under NRS 3.220, are plausible interpretations.



Since the meaning of the term is not clear but instead lends itself to more than one reasonable interpretation, we look to tools of statutory construction, including legislative history. *Lucero*, 127 Nev. at 95, 249 P.3d at 1228. During its 54th session, the Legislature adopted NRS 172.105 as part of an omnibus criminal procedure bill, Assembly Bill 81, which amended Nevada's existing criminal procedure laws. *See* 1967 Nev. Stat., ch. 523, §§ 1-468, at 1398-481. The original statute at statehood on the jurisdiction of district courts stated, "[t]he District Courts shall have jurisdiction to inquire, by the intervention of a grand jury, of all public offenses, *committed or triable* in their respective districts, to try and determine all indictments found therein, and to hear and determine appeals from Justices' or other inferior Courts in all cases of a criminal nature." Compiled Laws of Nevada, vol. I, ch. XL, § 25, at 223 (1873) (emphasis added). The words *"committed or triable* in their respective districts," *id.*, were used to define the criminal jurisdiction of district courts and grand juries until the adoption of NRS 172.105. *See* 1967 Nev. Stat., ch. 523, § 83, at 1408-09.

There is no content in the legislative history explaining the reasoning for this change in the description of the grand jury's authority to return an indictment. The original statute was phrased in the disjunctive and thus allowed the grand jury to inquire into public offenses either committed in the respective district for the court by which it was empaneled *or* triable in that district. A plain reading of the language now found in NRS 172.105, while not using the word "and," has a conjunctive meaning, i.e., the crime must be triable in the particular district or justice court and also "committed within the territorial jurisdiction of the district court for which it is impaneled."

 

Martinez Guzman's reading of the "committed" clause would significantly limit the scope of inquiries permitted by grand juries. Under his reading, multiple categories of cases for which venue is appropriate in a particular district could proceed only by information and not by grand jury indictment. For example, NRS 171.035 provides, "[w]hen an offense is committed on the boundary of two or more counties, or within 500 yards thereof, the venue is in either county." However, under Martinez Guzman's interpretation of NRS 172.105, the grand jury could not investigate such an offense and return a true bill unless it was established that the crime occurred in the county for which it is empaneled, not just within 500 yards of the boundary. As another example, NRS 171.055 provides, "[w]hen the offense, either of bigamy or incest, is committed in one county and the defendant is apprehended in another, the venue is in either county." Under Martinez Guzman's interpretation of NRS 172.105, the grand jury could not return an indictment in the county of apprehension. Instead, charges would have to proceed by a preliminary hearing and filing of an information even though venue in the county of apprehension is explicitly authorized by Nevada law. We assume that the Legislature was aware of these preexisting venue statutes when enacting NRS 172.105. *State v. Weddell*, 118 Nev. 206, 213 n.23, 43 P.3d 987, 991 n.23 (2002) (presuming that the Legislature was aware of existing statutes when it enacted another). Thus, we conclude that interpreting the statute as Martinez Guzman does would lead to an absurd or unreasonable result, and we decline to adopt it. *State v. Quinn*, 117 Nev. 709, 713, 30 P.3d 1117, 1120 (2001) (recognizing that statutory interpretation that would produce an absurd result should be avoided if an alternative interpretation is consistent with the Legislature's intent or a statutory scheme's purpose).

On the other hand, we also reject the State's proposed interpretation. In the State's view, the statute, which previously allowed the grand jury to investigate an offense that was either triable or committed within the district, now permits the grand jury to inquire into a criminal offense triable in the district court and committed anywhere in the State of Nevada. First, this interpretation ignores the limiting language contained at the end of NRS 172.105, requiring the offense to have been "committed within the territorial jurisdiction of the district court *for which it is impaneled.*" (Emphasis added.) This emphasized language would be superfluous if each district court had statewide territorial jurisdiction. *Walker v. Eighth Judicial Dist. Court*, 120 Nev. 815, 820, 101 P.3d 787, 791 (2004) (recognizing that courts should not construe words in a statute "in such a way as to render them mere surplusage").

Second, this interpretation would also present problems in returning an indictment in a case involving interstate crimes. We have recognized that NRS 171.020 expressly confers jurisdiction on Nevada courts "[w]henever a person, with intent to commit a crime, does any act within [Nevada] in execution or part execution of such intent, which culminates in the commission of a crime, either within or without [Nevada] . . . ." *McNamara v. State*, 132 Nev. 606, 611, 377 P.3d 106, 110 (2016) (quoting NRS 171.020). Under the State's reading of NRS 172.105, a grand jury could not return an indictment in a case like *McNamara* if the ultimate commission of the crime were outside Nevada, even if a person with intent to commit a crime did an act within Nevada in part execution of such intent.

Third, while NRS 3.220 provides that "*district judges* shall possess equal coextensive and concurrent jurisdiction and power" and that "[t]hey each shall have power to hold court in any county of this State," it

does not provide for statewide jurisdiction of a district court itself. (Emphasis added.) Instead, NRS 3.010 divides the state into 11 judicial districts and specifies, "The County of Washoe constitutes the Second Judicial District." The statutes governing the proper court to consider criminal charges, such as those found in NRS Chapter 171, also contradict the State's argument that a district court has territorial jurisdiction over a felony occurring anywhere in the state. Thus, the State's reading, too, would lead to an absurd or unreasonable result. *Quinn*, 117 Nev. at 713, 30 P.3d at 1120.

In our view, neither side's readings of NRS 172.105 properly interpret the term "territorial jurisdiction," which is a term of art. In *McNamara*, we observed that our courts obtain "territorial jurisdiction" over interstate criminal offenses when there is "a sufficient connection" between the offense and Nevada. 132 Nev. at 611, 377 P.3d at 110. To determine whether a sufficient connection existed to establish territorial jurisdiction, we looked to our statutes governing local jurisdiction. *Id*. at 610-11, 377 P.3d at 110 (relying on NRS 171.020, which is found in the portion of NRS Chapter 171 entitled "Local Jurisdiction of Public Offenses"). The statute at issue in *McNamara*, NRS 171.020, expressly confers jurisdiction on our courts "[w]henever a person, with intent to commit a crime, does any act within [Nevada] in execution or part execution of such intent, which culminates in the commission of a crime, either within or without [Nevada]." Based on NRS 171.020, we concluded that Nevada courts have territorial jurisdiction to charge a defendant with an interstate criminal offense that began outside Nevada if the offense continues into Nevada. *McNamara*, 132 Nev. at 611-12, 377 P.3d at 110-11. Indeed, we observed that, while the common law required proof that a "crime 'was committed within the territorial jurisdiction of the court and grand jury

 

where the indictment was found,'" *id.* at 610, 377 P.3d at 109-10 (quoting *People v. Gleason*, 1 Nev. 173, 178 (1865), *superseded by statute as stated in McNamara*, 132 Nev. 606, 377 P.3d 106), the adoption by the Nevada Legislature of NRS 171.020 "modified the common-law rule . . . to address territorial jurisdiction in the context of interstate crimes." *Id.* at 610, 377 P.3d at 110.

While that case arose in the context of interstate criminal offenses, its methodology for determining whether "territorial jurisdiction" exists also applies in the intercounty context. The same portion of NRS Chapter 171 similarly provides rules to address territorial jurisdiction for intercounty offenses. *See, e.g.,* NRS 171.030 (providing, "[w]hen a public offense is committed in part in one county and in part in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the venue is in either county").[4] The fact that statutes addressing intercounty crimes refer to "venue" rather than "jurisdiction" does not imply we should engage in a different analysis. In *McNamara* itself, we did not distinguish between the interstate and intercounty contexts in determining the limits of territorial jurisdiction, instead referring to a statute governing the county where a kidnapping prosecution may be instituted as a "jurisdictional rule[ ] for kidnapping." 132 Nev. at 612 n.2, 377 P.3d at 111 n.2 (citing NRS 200.350(1)). Furthermore, the case we discussed in *McNamara* to illustrate the common-law rule of territorial jurisdiction was an intercounty case, rather than an interstate one. *Id.* at 610, 377 P.3d at 109-10 (citing *Gleason*, 1 Nev. at 178

---

[4]There are also statutes governing territorial jurisdiction in other sections of the Nevada Revised Statutes, including NRS 200.110 (governing the place of trial for a homicide in certain circumstances) and NRS 200.350 (governing the place of trial for kidnapping).

(addressing territorial jurisdiction for a murder trial in Lander County when the defense sought an instruction regarding the need for the prosecution to prove the murder had occurred in that county)). Thus, just as in a case involving interstate offenses, territorial jurisdiction in a case involving intercounty offenses depends on whether the necessary connections, as identified in Nevada's statutes, to the location of the court exist.

Here, the district court denied Martinez Guzman's motion to dismiss based on its determination that the Washoe County grand jury's authority to return an indictment is coextensive with the Second Judicial District Court's general jurisdiction, which it found "extends statewide to all felony offenses." That determination does not comport with the statutory language limiting the grand jury's authority to inquire into crimes "committed within the territorial jurisdiction of the district court for which it is impaneled." NRS 172.105. Nor does it synthesize with NRS Chapter 171 or *McNamara*, which tie "territorial jurisdiction" to our statutes governing the proper jurisdiction and venue for criminal prosecutions. Therefore, territorial jurisdiction under NRS 172.105 cannot and does not extend statewide.

Accordingly, we hold that the term territorial jurisdiction under NRS 172.105 is a term of art that incorporates Nevada's statutes governing venue and, thus, the statute empowers a grand jury to inquire into an offense so long as the district court that empaneled the grand jury may appropriately adjudicate the defendant's guilt for that particular offense. Under NRS 172.105, if venue is proper in a given district court for an alleged criminal offense, then it was committed within that court's territorial jurisdiction and a grand jury empaneled by that district court has the authority to inquire into that offense. This determination is a question

 

reserved for the court. *McNamara*, 132 Nev. at 613, 377 P.3d at 112. While the motion to dismiss in this case did not directly challenge the venue of the Second Judicial District Court, in order to resolve Martinez Guzman's challenge to the authority of the Washoe County grand jury to investigate the counts at issue, the court must analyze the applicable venue provisions to determine whether the grand jury exceeded its power.[5]

## CONCLUSION

In denying Martinez Guzman's motion to dismiss, the district court erred by concluding that "the Second Judicial District Court's territorial jurisdiction extends statewide to all felony offenses" and "[t]he Grand Jury possesses the same authority." Accordingly, we grant Martinez Guzman's petition in part and vacate the order denying his motion to dismiss. We deny the petition to the extent it seeks a writ requiring the district court to grant his motion to dismiss outright. Instead, in reconsidering the motion, the district court must determine, based on the evidence presented to the Washoe County grand jury, if venue is proper in the Second Judicial District Court for the Douglas County charges under the applicable statutes. If so, then the district court has "territorial jurisdiction" over those criminal offenses and the grand jury thus has authority to return an indictment on those charges. If not, the district court shall grant Martinez Guzman's motion to dismiss the Douglas County charges for lack of territorial jurisdiction. A dismissal at this stage would not prevent Douglas County from initiating its own criminal proceedings

---

[5]In denying Martinez Guzman's pretrial petition for a writ of habeas corpus, the district court addressed some facts that could pertain to whether venue is proper for the Douglas County charges in Washoe County. However, the district court ultimately denied Martinez Guzman's petition and his motion to dismiss based on its conclusion that territorial jurisdiction extends statewide to all offenses.

 

regarding Martinez Guzman's alleged Douglas County offenses. *See* NRS 171.075 (preventing prosecution of an offense in one county after "a conviction or acquittal thereof . . . in another"); *Thomas v. Eighth Judicial Dist. Court*, 133 Nev. 468, 479, 402 P.3d 619, 629 (2017) ("It is well settled that double jeopardy attaches when the jury is sworn.").

Accordingly, we grant the petition in part and direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate its order denying Martinez Guzman's motion to dismiss and to reconsider the motion consistent with this opinion. We deny the petition in all other respects.

_____, J.
Cadish

We concur:

_____, C.J.
Pickering

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Silver